Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Phone: (415) 421-2624
Fax: (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Interested Party
Bernadette Cattaneo

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# MODESTO DIVISION

| | |
|---|---|
| IN RE ANDREAS ABRAMSON,<br><br>Debtor. | Case No. 18-90258<br>Chapter 7<br>DCN: MF-6<br><br>Hearing<br>Date: TBD<br>Time: TBD<br>Place: TBD<br>Judge: Hon. Ronald H. Sargis |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE[1]

Interested party Bernadette Cattaneo ("Cattaneo") submits this Memorandum of Points and Authorities in Support of Motion to Intervene in the bankruptcy case of Andreas Abramson ("Debtor"), and specifically in the matter of the Debtor's Amended Motion to Avoid Judicial

---

[1] Unless specified otherwise, chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure and "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Dckt." references are to the docket in this proceeding.

MPA IN SUPPORT OF
MOTION TO INTERVENE  1

Lien of Helen McAbee (the "Lien Avoidance Motion"). *See* Dckt. 141. Cattaneo makes her Motion to Intervene (the "Motion") pursuant to Bankruptcy Rules 7024 and 2018.

Intervention is justified because Cattaneo meets the requirements for both intervention as a matter of right and permissive intervention at the discretion of the court. Cattaneo meets the requirements for intervention as a matter of right because the disposition of the Debtor's Lien Avoidance Motion will directly impair Cattaneo's economic interest and because no other party adequately represents that interest. Furthermore, permissive intervention is appropriate because her opposition shares common questions of law and fact with the Debtor's Lien Avoidance Motion.

## I. BACKGROUND

Cattaneo filed a petition for dissolution of marriage from the Debtor in April 2009 in the Superior Court of California, County of Tuolumne. Declaration of Bernadette Cattaneo in Support of Motion to Intervene ("Cattaneo Decl."), ¶ 2. The case was later transferred to the Superior Court of California, County of Calaveras, and assigned Case Number 17FL42860 (the "Family Law Action"). *Id.* When she filed for dissolution of marriage, Cattaneo and the Debtor co-owned the following real property: (1) 2720 Arlington Road, Hollister, California (the "Arlington Property"); (2) 841 Calais Circle, Hollister, California (the "Calais Property"); and (3) 83 Sanguinetti Court, Copperopolis, California (the "Sanguinetti Property"). *Id.*

In May 2011, before the entry of any judgment in the Family Law Action, Helen McAbee ("McAbee") obtained a judgment in the Superior Court of California, San Benito County, against the Debtor and Cattaneo in the amount of $626,557.00 (the "McAbee Judgment"). *Id.* at ¶ 3. In June 2013, McAbee recorded an abstract of the McAbee Judgment in Calaveras County and San Benito County. *Id.* McAbee has asserted judgment liens against the Arlington Property (the "McAbee Arlington Judgment Lien"), the Calais Property (the "McAbee Calais Judgment Lien"), and the Sanguinetti Property (the "McAbee Sanguinetti Judgment Lien") based upon the McAbee Judgment and the recorded abstracts of judgment. *Id.* As such, all three properties are subject to being used to satisfy the McAbee Judgment.

MPA IN SUPPORT OF
MOTION TO INTERVENE  2

The Family Court entered judgment in the Family Law Action in January. *Id.* at ¶ 4. Under that judgment, the Calais Property was awarded to Cattaneo, the Sanguinetti Property was awarded to the Debtor, and ownership of the Arlington Property was left as a reserved issue. *Id.* Cattaneo currently owns the Calais Property as her sole and separate property. *Id.* On July 27, 2018, McAbee field a writ of execution on the Calais Property. *Id.*

The Debtor filed a voluntary Chapter 7 petition on April 13, 2018. Dckt. 1. The Debtor lists the Sanguinetti Property in Schedule A of his Amended Schedules and Statement of Financial Affairs. Dckt. 6. He lists the value of the Sanguinetti Property as $1,160,027 and claims exempt equity in the amount of $75,000.00. *Id.*

On July 11, 2018, the Debtor filed the Lien Avoidance Motion seeking to avoid several liens against the Sanguinetti Property, including that asserted by McAbee. Dckt. 74. The Debtor filed an amended Lien Avoidance Motion on August 8, 2018. Dckt. 141. The motion seeks to avoid the McAbee Sanguinetti Judgment Lien which is secured by the Sanguinetti Property. *See* Dckt. 142. Cattaneo opposed the Debtor's motion as did McAbee.[2] Both oppositions used the same appraisal and broker's opinion of value.

The Court held a status conference hearing on September 27, 2018. At the hearing, the court set a pre-evidentiary hearing on the Debtor's Lien Avoidance Motion on January 10, 2019. Dckt. 199. The court also directed Cattaneo to file a motion to intervene in this contested matter on or before October 26, 2018. Dckt. 201. Cattaneo was instructed to identify "the issues for which intervention is requested and how such intervention will be coordinated with the opposition being prosecuted by creditor Helen McAbee." *Id.*

On September 20, 2018, the Superior Court of California, County of Calaveras, entered an order setting trial in the Family Law Action to begin on January 23, 2019. Cattaneo Decl. at ¶ 5. The issues include "[t]he McAbee debt" and "redistribution of community property and/or debts to equalize the division of community property and debts between the parties," among

---

[2] For procedural reasons, the court dismissed the Debtor's initial Lien Avoidance Motion without prejudice and noted that the Debtor filed a new series of avoidance motions. Dckt. 152.

MPA IN SUPPORT OF
MOTION TO INTERVENE 3

others. *Id.* At trial, Cattaneo will request that the Superior Court redistribute to her an interest in the Sanguinetti Property based on her sole efforts to reduce the debt against it, such as her full payoff of the second mortgage of approximately $200,000. *Id.* at ¶ 6.

## II. IDENTIFICATION OF ISSUES AND COORDINATION WITH McABEE

Without limitation, Cattaneo requests intervention on the following issues material to the Debtor's Lien Avoidance Motion:

1. The value of the Sanguinetti Property; and
2. The validity and amount of the obligation and deed of trust asserted by the Debtor's father, Michael Abramson, against the Sanguinetti Property.

These are the same two issues challenged by McAbee. Moreover, as noted above, McAbee and Cattaneo have relied upon (and will continue to rely upon) the same appraisal and broker's opinion so Cattaneo's involvement will not multiply the proceedings or witnesses. Cattaneo will continue to coordinate with McAbee in developing further evidence, retaining any additional expert witnesses, and conducting discovery, including examination of the Debtor and the Debtor's father, Michael Abramson. Cattaneo's involvement will not substantially increase the complexity, duration, or expense of litigation.

## III. DISCUSSION

### A. Cattaneo has Standing

Cattaneo has standing to bring this Motion and to be heard in relation to the Debtor's Lien Avoidance Motion. Generally, a litigant seeking to intervene as of right must demonstrate Article III standing. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). To establish Article III standing, the intervenor "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the [opposing party], and (3) that is likely to be redressed by a favorable judicial decision" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent," but does not include conjectural or hypothetical harm. *Lujan v Defenders of Wildlife*, 504 US 555, 560 (1992).

MPA IN SUPPORT OF
MOTION TO INTERVENE 4

Cattaneo fulfills these requirements. Her injury is the imminent and material financial impact of any decision entered by this court on the Debtor's Lien Avoidance Motion. The court's ruling will affect her exposure to the McAbee Judgment because the Calais Property and Arlington Property will remain liable for any amounts not secured and paid by the Sanguinetti Property. Moreover, depending on the outcome of the upcoming trial in the Family Law Action, Cattaneo may end up with an ownership interest in the Sanguinetti Property. In other words, Cattaneo has a personal stake in the outcome of the Debtor's Lien Avoidance Motion that establishes her standing to be heard in relation to the matter.

At a prior hearing, the court analogized Cattaneo's position to that of a guarantor of an obligation.[3] A guarantor is "any person or entity who promises to pay a loan if the principal does not," and is "only liable if the debtor defaults on the debt." *Bouvier Law Dictionary* (2012). Because Cattaneo is already liable on the McAbee Judgment, she believes her position is more like that of a surety or co-obligor that is primarily and directly liable for a debt. The outcome of the Debtor's Lien Avoidance Motion will directly impact Cattaneo's exposure to the McAbee Judgment. Cattaneo's exposure is not derivative of the legal relationship between the Debtor and McAbee; rather, her exposure is a central and integral part of the legal relationship between herself, the Debtor, and McAbee. Her interest is therefore sufficient to confer standing to be heard in relation to this matter.

B. Legal Authority for Intervention

Bankruptcy courts apply Civil Rule 24 when considering an entity's right to intervene. Bankruptcy Rule 7024 states that Civil Rule 24 applies in adversary proceedings. Cattaneo concedes that this matter is a contested matter and not an adversary proceeding, and that Bankruptcy Rule 9014(c) does not make Bankruptcy Rule 7024 automatically applicable in contested matters. However, Bankruptcy Rule 9014(c) provides that "[t]he court may at any

---

[3] Most courts have found that when harm to a guarantor is derivative of harm to the obligor, their status as guarantor does not confer standing. *See, e.g., Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) (guarantors of corporate debt lack standing to assert RICO violations).

MPA IN SUPPORT OF
MOTION TO INTERVENE 5

stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Because the court directed Cattaneo to file a motion to intervene, she proceeds on the assumption that Bankruptcy Rule 7024 applies in this contested matter.

Alternatively, Cattaneo brings this motion pursuant to Bankruptcy Rule 2018, which "encompasses all controversies determinable by the court and all matters of administration during the pendency of the case." *In re Torrez*, 132 B.R. 924, 934 (Bankr. E.D. Cal. 1991). While some authorities suggest that Bankruptcy Rule 2018 only applies in the context of Chapter 11 cases, the better view is that Bankruptcy Rule 2018 also applies in Chapter 7 cases. *Compare Hasso v. Mozsgai*, 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002) ("Section 1109(b) is implemented by Rule 2018 . . . .") *with Term Loan Holder Comm. v. Ozer Group, L.L.C.*, 303 F.3d 161, n.9 (2nd Cir. 2002) ("While the advisory committee note to FRBP 2018 states that it 'implements' § 1109, it is clear that § 1109(b) provides for intervention as of right by a party in interest while FRBP 2018 provides for permissive intervention by an entity not otherwise entitled to do so under the Code (e.g., an entity other than a party in interest under § 1109(b))."); 9 *Collier on Bankruptcy* ¶ 2018.01–02 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.).

    C.  <u>Cattaneo Fulfills the Requirements to Intervene as a Matter of Right</u>

Civil Rule 24(a)(2) requires the court to permit anyone to intervene who establishes that

> (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990).

The Ninth Circuit has established several guidelines for courts considering a motion to intervene. First, courts should interpret the requirements of Civil Rule 24 broadly in favor of intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). Second, courts must take as true the non-conclusory assertions made in support of intervention. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001). Finally, courts should be guided by practical and equitable

considerations when deciding whether intervention is appropriate. *Donnelly v. Glickman*, 159 F.3d 405 at 409.

There can be no dispute that Cattaneo meets the first requirement for intervention. This motion is timely because it was filed before the October 26, 2018, deadline set by the court.

The second and third requirements are fulfilled. Cattaneo properly asserts an interest in the outcome of the Debtor's Lien Avoidance Motion because the court's ruling will affect her exposure to the McAbee Judgment. Her economic interests are directly implicated, and she is substantially affected in a practical sense by this contested matter. *See Berg*, 268 F.3d at 822 ("if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene"); *see also Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) ("To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. *This burden is minimal.*") (emphasis added).

Without intervention, the disposition of the Debtor's Lien Avoidance Motion, as a practical matter, will impair or impede Cattaneo's ability to protect her interest in the Sanguinetti Property (which shall be determined at the upcoming Family Law Action trial), the Arlington Property (which Cattaneo jointly owns with the Debtor), and the Calais Property (which Cattaneo owns as sole and separate property). To the extent that the Debtor can avoid the McAbee Sanguinetti Judgment Lien, Cattaneo will be affected because she will be subject to enforcement of the McAbee Judgment against the Arlington Property and the Calais Property. Conversely, if McAbee is permitted to enforce her rights against the Sanguinetti Property, the outstanding balance of the McAbee Judgment will be reduced and McAbee's right to enforce her judgment against the Arlington Property and the Calais Property will be diminished or eliminated. These interests are further complicated by the upcoming trial in the Family Law Action. In that action, the court will consider the McAbee debt and the "redistribution of community property [including the Sanguinetti Property] and/or debts to equalize the division of community property and debts between the parties," among other issues.

MPA IN SUPPORT OF
MOTION TO INTERVENE 7

1   Finally, Cattaneo satisfies the fourth requirement because her interest is not adequately
2   represented by the existing parties. Adequacy of representation is presumed where the intervenor
3   shares the same "ultimate objective" as a party. *Perry v. Proposition 8 Official Proponents*, 587
4   F.3d 947, 951 (9th Cir. 2009). However, that is not the case here. While at first glance it may
5   appear that McAbee may share similar objectives with Cattaneo, such as a desire to maximize
6   the value of the Sanguinetti Property in opposing the Debtor's Lien Avoidance Motion, their
7   interests diverge upon further examination. To begin with, Cattaneo filed the initial objection to
8   the Lien Avoidance Motion and obtained evidence, comprising the appraisal and broker's
9   opinion of value, that form the basis for the opposition. Second, McAbee is driven by the desire
10  to satisfy her judgment. Cattaneo's objective, on the other hand, is to minimize her exposure to
11  the satisfaction of that judgment. In other words, McAbee just wants to be paid, and Cattaneo is
12  seeking to protect her property. Strategic considerations may factor in to upcoming litigation of
13  the motion to avoid. Without Cattaneo's involvement and efforts to develop evidence, her
14  interests will not be adequately represented by McAbee. Furthermore, exclusion of Cattaneo
15  opens the possibility of a settlement between McAbee and the Debtor that would be detrimental
16  to Cattaneo's position.

17  Thus, Cattaneo satisfies all four requirements for intervening as a matter of right. Her
18  position is further strengthened because the court is required to accept as true the non-conclusory
19  assertions made in support of intervention and is required to interpret Civil Rule 24's
20  requirements broadly in favor of intervention. *Berg*, 268 F.3d at 819; *Donnelly*, 159 F.3d at 409.

21  D.  <u>Cattaneo Fulfills the Requirements for Permissive Intervention</u>

22  Civil Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone
23  to intervene who . . . (B) has a claim or defense that shares with the main action a common
24  question of law or fact."[4] The Ninth Circuit often enunciates the test for permissive intervention

---

[4] Alternatively, permissive intervention is described by Bankruptcy Rule 2018(a), which states that "for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." "Cause" may be shown by establishing "an economic interest [in the pending matter] or the fact that no other entity exists to adequately protect the interested entity's position." *Hasso*, 290 B.R. at 728 (citing 9 *Collier on Bankruptcy* ¶

MPA IN SUPPORT OF
MOTION TO INTERVENE                                                                              8

as requiring "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *See, e.g., Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). The first requirement, an independent ground for jurisdiction, "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843. As such, the first requirement is not applicable here because a bankruptcy administered by the federal courts is a federal-question case and because Cattaneo does not raise any new claims. Only the second and third requirements remain, and they are easily fulfilled. Cattaneo's Motion is timely because it is brought before the October 26, 2018, deadline set by court order. Common questions of law and fact include the value of the Sanguinetti Property, the validity and amount of the obligation and deed of trust asserted by Michael Abramson, and the Debtor's entitlement to avoid the McAbee Judgment Lien. Accordingly, Cattaneo satisfies the requirements for permissive intervention.

## IV. CONCLUSION

For the reasons stated above, Cattaneo meets all requirements for intervention as a matter of right pursuant to Civil Rule 24(a)(2) as incorporated by Bankruptcy Rule 7024. She also meets the requirements for permissive intervention pursuant to Civil Rule 24(b)(1)(B) and Bankruptcy Rule 2018(a). Thus, Cattaneo respectfully requests that this court grant her motion.

DATED: October 10, 2018　　　　　　　　FINESTONE HAYES LLP

/s/ Stephen D. Finestone
Stephen D. Finestone
Attorney for Bernadette Cattaneo

---

2018.04[3] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed.)). As described in the discussion of mandatory intervention, Cattaneo has an economic interest in the Debtor's motion to avoid the McAbee Sanguinetti Judgment Lien and no other entity exists to adequately protect her position.

MPA IN SUPPORT OF
MOTION TO INTERVENE　　　　　　　　　　　　　　　　　　　　　　　　　9