Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Phone: (415) 421-2624
Fax: (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Interested Party
Bernadette Cattaneo

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# MODESTO DIVISION

| | |
|---|---|
| In re<br><br>ANDREAS ABRAMSON,<br><br>                         Debtor. | Case No. 18-90258<br>Chapter 7<br>DCN: MF-6<br><br><u>Hearing</u><br>Date:  December 20, 2018<br>Time:  10:30 a.m.<br>Dept:  E<br>Place:  1200 I Street, Suite 4<br>          Modesto, California 95354<br><br>Judge: Hon. Ronald H. Sargis |

## SUPPLEMENTAL BRIEF REGARDING SECTION 522 LIEN STRIPPING[1]

Andreas Abramson (the "Debtor") filed a motion to avoid the judicial lien of Helen McAbee (the "McAbee Lien," asserted by creditor "McAbee") against property commonly known as 83 Sanguinetti Court in Copperopolis, California (the "Property"). Dckt. 141. The

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. Bare "ECF" references are to the docket in this proceeding.

Court issued an order allowing Bernadette Cattaneo ("Cattaneo"), the Debtor's ex-wife, to intervene in the contested matter as a co-obligor to McAbee. Dckt. 225.

On October 25, 2018, the Court issued an order requiring supplemental briefing regarding the application of the lien-stripping provisions found in § 522. Dckt. 224. The Debtor filed his supplemental brief on November 16, 2018. Dckt. 229. Cattaneo respectfully submits her supplemental brief as directed by the Court.

## I. BACKGROUND

The Debtor asserts that the fair market value of the Property is $1,160,027; McAbee and Cattaneo assert the higher value of $1,725,000. The Property is subject to three encumbrances. In order of seniority pursuant to California state law, they are: (1) a first deed of trust for $925,557; (2) McAbee's lien for $770,000; and (3) an alleged second deed of trust in favor of the Debtor's father for $265,000 that was placed on the Property approximately three years after the McAbee Lien. The Debtor's claimed homestead exemption is $75,000.

If granted, the Debtor's motion to avoid the McAbee Lien pursuant to § 522 would eliminate the second-priority lien while leaving the junior lien intact. This would appear to provide the junior lienholder a windfall. As noted by the Court, this raises questions about (1) the intent of Congress in drafting § 522; (2) whether Congress drafted a statute that creates an incentive for insiders to manufacture impairment by collusively creating junior liens; and (3) what the proper application of § 522 is in this context. To begin answering these questions, it is useful to examine the various ways in which courts have applied § 522.

## II. VARIED INTERPRETATIONS OF SECTION 522

Section 522 proscribes the ability of a debtor to avoid liens against exempt property, allowing a debtor to wipe out judicial liens on certain property to the extent that those liens impair a debtor's exemption in that property. § 522(f)(1). The plain language of § 522(f)(2) states that "a lien shall be considered to impair an exemption to the extent that the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens."

Application of § 522 to avoid a lien that is senior to a lower-priority consensual lien, a so-called "sandwich lien" scenario, creates uncertainty. Some courts have disregarded state-law lien priority in this situation, allowing debtors to avoid judicial liens that are senior to other consensual liens. However, this outcome is not uniform.

A. Cases Allowing Lien Avoidance in a "Sandwich Lien" Scenario

The case of *Moldo v. Charnock (In re Charnock)* addressed a similar situation.[2] 318 B.R. 720 (B.A.P. 9th Cir. 2004). In that case, the debtor's residence was worth $435,000. The residence was subject to a judicial lien in the amount of $68,293 in first position and a junior deed of trust in the amount of $371,055.97, which was the source of Debtor's purchase of the property. The debtor's homestead exemption was $75,000. The exemption and liens totaled $514,348.97, exceeding the value of the residence. *Id* at 722. The court allowed the debtor to avoid the senior judicial lien. In addressing the "windfall" scenario for the junior lienholder, the court concluded that since the exemption was greater than the amount of the avoided lien, the debtor was the beneficiary of the preserved avoided judgment lien, the junior lienholder did not receive any windfall and was still subject to the same judgment lien. *Id.* at 726. *See also In re Simonsen*, 758 F.2d 103 at 112 (3rd Cir. 1985).

Under the circumstances in *Charnock*, the homestead exemption and deed of trust completely consumed the equity in the property, leaving nothing remaining to which the judicial lien could attach. This situation contrasts with the instant case, in which the McAbee Lien is significantly larger than the exemption. What happens if the McAbee lien is avoided in full? Pursuant to the *Simonson* dissent and the legislative history, the junior deed should not "benefit" by improving his position. If the entire judgment lien is avoided up to the amount of whatever the Property value is determined by the Court, and the lien is preserved for the debtor, then he receives a windfall far greater than his exemption.[3]

---

[2] *See also In re Smith*, 2006 Bankr. LEXIS 877, 2006 WL 1467108 (Bankr. M.D. Ga. May 16, 2006); *Cadle Co. v. Taras (In re Taras)*, 131 Fed. Appx. 167 (11th Cir. 2005); *In re Brinley*, 403 F.3d 415 (6th Cir. 2005); and *In re Kolich*, 328 F.3d 406 (8th Cir. 2003).

[3] Assuming for sake of argument the Debtor's Property valuation of $1,160,027, the Debtor's father's lien is completely unsecured without avoidance of the McAbee Lien. Full

CATTANEO'S SUPPLEMENTAL BRIEF RE § 522(f)(2) AND (i)     3/8

Though it allowed Debtor to avoid the judicial lien, the court in *Charnock* echoed the concerns expressed in *Kolich* regarding the potential application of § 522. The court stated that it was:

> . . . not entirely comfortable with the equities of literally applying the statutory formula in this situation. It may give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment. One would expect lenders to refuse to make such high-risk loans, but there may be times when self-interest or hard-to-detect collusion will lead to an abuse of § 522(f). On the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to provide—for example, if a drop in market value has left exempt property over-encumbered by a judicial lien and a junior consensual lien, and the judicial lienholder insists upon foreclosure. With the competing equities both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it.

*Charnock*, 318 B.R. at 729 (quoting *Kolich*, 328 F.3d at 410). In Debtor's case, the competing equities are not so finely balanced. This is not a case where a drop in market value has left property over-encumbered and the judicial lienholder is insisting upon foreclosure. Rather, the instant case presents the situation where self-interest and possible collusion between the Debtor and his father have led to the assertion of a junior consensual lien that appears manufactured to avoid the McAbee Lien.[4]

B.  Cases Disallowing Lien Avoidance in a "Sandwich Lien" Scenario

Several courts have declined to avoid judicial liens in sandwich lien scenarios. In *In re Radcliffe*, 278 B.R. 426 (W.D. Ky. 2006), the debtor's property was worth $250,000. In order of priority, there were liens against the property of (1) $15,000 for ad valorem real estate taxes; (2) a first mortgage for $180,000; (3) a judgment lien for $112,418.35; and (4) a state tax lien for $56,548.93. The debtor's homestead exemption was $6,000. *Id* at 427.

---

avoidance of the McAbee Lien without preservation of the lien would provide Debtor's father an improvement of his position or windfall of $159,470. *See* Order for Supplemental Briefing, Dckt. 224 at 3:8-18 (describing $159,470 windfall). Further calculations are provided below.

[4] In addition to the motivation behind Debtor's father's lien, Cattaneo and McAbee question the validity of the debt. Cattaneo and McAbee will be deposing Debtor's father on these issues in early January 2019.

CATTANEO'S SUPPLEMENTAL BRIEF RE § 522(f)(2) AND (i)     4/8

1   On a motion to avoid the judgment lien, the court found that Congress did not intend to
2   alter state law lien priorities with the language of § 552. This interpretation avoids any
3   constitutional issues regarding the elimination of existing property rights under the Fifth
4   Amendment's takings clause. *Id.* at 428. *See also In re Dolan*, 230 B.R. 642, 647 (Bankr. D.
5   Conn. 1999) (citing *U.S. v. Security Industrial Bank*, 459 U.S. 70, 78 (1982) (enunciating the
6   "cardinal principle that this Court will first ascertain whether a construction of the statute is
7   fairly possible by which the constitutional question may be avoided")). The *Radcliffe* court cited
8   *Dolan* for support:

> Since state law priority determines the order in which judicial liens be avoided, the court concludes, under the circumstances of this case, that the formula be applied to exclude junior nonavoidable liens in the computation of whether [a] judgment lien impairs [the debtor's] exemption, thereby avoiding the constitutional issue.

12  *In re Radcliffe*, 278 B.R. at 428. The court concluded that the priority of liens was material to
13  considering a lien avoidance motion under § 522, and that junior unavoidable liens must be
14  excluded from calculation of whether a judicial lien impairs a debtor's exemption. *Id. See also,*
15  *In re Sweeting*, 151 B.R. 322, 324 (Bankr. W.D.N.Y. 1992); *In re Spearman*, 124 B.R. 620, 623
16  (E.D.N.Y. 1991). (decided before the amendments to Section 522)

**III.    APPLICATION OF SECTION 522 TO THE FACTS OF THIS CASE**

    A.  <u>There Is No Binding Authority Requiring the Result Argued by the Debtor</u>

As a preliminary matter, there is no binding authority directing the Court's application of § 522 to the facts of this case. As a Bankruptcy Appellate Panel decision, *Charnock* is not controlling authority. *America's Servicing Co. v. Schwartz-Tallard* (*In re Schwartz-Tallard*), 765 F.3d 1095, 1114 (9th Cir. 2014). Bankruptcy Appellate Panel decisions are only binding on the parties to that case. Only Circuit Court decisions bind all lower courts in that circuit, and there is no Ninth Circuit case addressing this issue. Accordingly, this Court is not bound by any existing case law.

    B.  <u>*Simonson* Suggests the Congress Intended a Different Result</u>

The Court identified *In re Simonson* as the source of the legal theory incorporated by Congress in the drafting of the 1994 amendments to § 522. That case states that:

CATTANEO'S SUPPLEMENTAL BRIEF RE § 522(f)(2) AND (i)                                5/8

> [The debtors] should be permitted to apply to their exemption the value of the avoided liens . . . leaving the [junior lienholder] in the same priority position it occupied prior to the commencement of the case. This result not only effectuates Congress' intent to preserve the debtor's exemption and thereby provide them with a "fresh start," but also prevents a junior encumbrancer from receiving a windfall merely because the debtor chose to avoid the superior judicial liens. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 376, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6332 (noting that a primary purpose of § 551 as a whole is to prevent junior creditors from benefitting at the expense of the estate when senior liens are avoided).

*Id.* at 110 (citation to the dissent, which was the position explicitly adopted by Congress).

Under this guidance, it appears that Congress intended that debtors be able to preserve their exemption from the value of an avoided lien, and that junior lienholders be left in the same position they originally occupied—receiving neither windfall nor injury.

The proper calculation in this case, then, begins with a consideration of the value of the Property. The parties have differing views of this value, so two competing calculations are provided below. From this value is subtracted the first-priority deed of trust. Next in line is the McAbee Lien, which impairs the Debtor's claim of exemption pursuant to a plain reading of § 522(f)(2). Because the McAbee Lien impairs the Debtor's exemption, the Debtor is allowed to apply his exemption to the value of the avoided lien. As such, the lien is avoided to the extent that it impairs the Debtor's exemption—by $75,000. At the end of the priority line is the junior deed of trust, which is left in exactly the same position that it was in prior to the partial avoidance of the McAbee Lien.

|  | **Debtor's valuation** | **Creditor's valuation** |
| --- | --- | --- |
| Property | $1,160,027 | $1,725,000 |
| 1st DOT | ($925,557) | ($925,557) |
| Subtotal | $234,470 | $799,443 |
| Exemption | ($75,000) | ($75,000) |
| Subtotal | $159,470 | $724,443 |
| **Available for McAbee Lien** | **$159,470** | **$724,443** |
| Amount of McAbee Lien avoided | $610,530 | $45,557 |

CATTANEO'S SUPPLEMENTAL BRIEF RE § 522(f)(2) AND (i)        6/8

1    Under this analysis, the Debtor's claim of exemption is applied to the judgment lien and
2 the position of the junior lienholder is unchanged. This result accomplishes exactly what is
3 described in the dissent in *Simonson* and is what Congress intended. There is no windfall to the
4 junior lienholder under this analysis, though the junior could benefit from an increase in value as
5 the McAbee lien would be reduced and fixed in an amount as of the date of the bankruptcy
6 filing.[5] Meanwhile, the Debtor receives his "fresh start" by receiving or preserving his
7 exemption.

8    C.  This Case Presents the Situation so Concerning to the Courts in *Charnock* and *Kolich*

9    Even if the Court were inclined to apply the analysis espoused in *Charnock* and *Kolich*,
10 the specific facts of our case reveal the uncomfortable scenario cautioned by those decisions.
11 Both of those decisions involved junior liens held by institutional lenders, and not by relatives or
12 insiders. Both decisions also involved junior consensual lienholders that were unaware of a
13 senior judgment lien at the time of their transaction with the debtor. The courts cautioned that
14 their application of § 522 would "give a debtor contemplating bankruptcy the ability to wipe out
15 judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the
16 exempt property over-encumbered and therefore ripe for impairment," and that this could lead to
17 abuses of § 522(f) resulting from "self-interest or hard-to-detect collusion." *Charnock*, 318 B.R.
18 at 729 (quoting *Kolich*, 328 F.3d at 410).

19    Cattaneo alleges that the Debtor and his father (the holder of the second deed of trust)
20 colluded to manufacture the junior second deed of trust with the purpose of defeating the senior
21 McAbee Lien. Even if not, the loan was an insider transaction made with full knowledge of the
22 judgment lien and should not be factored into the avoidance analysis.

---

[5] *See* 4 Collier on Bankruptcy at ¶ 522.11 (16th ed. 2018) ("Avoiding the judicial liens should not have had the effect of moving the second mortgage lender up the priority ladder. Rather, under section 522(i)(2), those judicial liens should have been preserved for the benefit of the debtor's exemption as contemplated in that section. This would not have injured the second mortgage holder in any way, and it also would have provided the treatment to judicial liens that section 522(f)(1) anticipates.").

CATTANEO'S SUPPLEMENTAL BRIEF RE § 522(f)(2) AND (i)                                          7/8

## IV. CONCLUSION

For the reasons stated above, Cattaneo suggests that the Court consider excluding the junior consensual lien in the mathematical calculation for avoidance purposes.

DATED: December 7, 2018          FINESTONE HAYES LLP

*/s/ Stephen D. Finestone*
Stephen D. Finestone
Attorney for Bernadette Cattaneo