# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTES

**Case Title:** Andreas Abramson

**Case No.:** 18-90258 - E - 7
**Docket Control No.** MF-6
**Date:** 12/20/2018
**Time:** 10:30 AM

**Matter:**  [207] - Motion/Application to Intervene [MF-6] Filed by Creditor Bernadette F. Cattaneo (msts)

**Judge: Ronald H. Sargis**
**Courtroom Deputy: Michelle Peterson**
**Reporter: Amanda Dunn**
**Department: E**

**APPEARANCES for:**
**Movant(s):**
(by phone) Creditor's Attorney - Stephen D. Finestone
**Respondent(s):**
Debtor - Andreas Abramson; Debtor's Attorney - Iain A. Macdonald; (by phone) Creditor's Attorney - Madolyn D. Orr

### CIVIL MINUTES

EVIDENTIARY HEARING SCHEDULING CONFERENCE TO BE HELD ON 2/14/2019 at 10:30 AM at Modesto Courtroom

Motion was Concluded

Findings of fact and conclusions of law stated orally on the record

### ORDER TO BE PREPARED BY: CHAMBERS

Local Rule 9014-1(f)(1) Motion—Hearing Required.

Sufficient Notice Provided.  The Proof of Service states that the Motion and supporting pleadings were served on Debtor and Creditor on October 10, 2018. The court set the hearing for October 25, 2018. Dckt. 213.

     The Motion To Intervene has been set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(1).  Failure of the respondent and other parties in interest to file written opposition at least fourteen days prior to the hearing as required by Local Bankruptcy Rule 9014-1(f)(1)(B) is considered to be the equivalent of a statement of nonopposition. *Cf. Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (upholding a court ruling based upon a local

rule construing a party's failure to file opposition as consent to grant a motion). The defaults of the non-responding parties and other parties in interest are entered.

> **The court shall issue its order setting a Evidentiary Hearing Scheduling Conference for 10:30 a.m. on February 14, 2019.** On or before January 15, 2019, Debtor Andreas Abramson, as Movant, shall lodge with the court and serve his direct testimony statements, exhibits and hearing brief on Creditor Helen McAbee and Intervenor co-obligor Bernadette Cattaneo. On or before February 5, 2019, Helen McAbee and Bernadette Cattaneo shall lodge with the court and serve on Debtor their direct testimony statements, exhibits, and hearing briefs.

Bernadette Cattaneo ("Movant") filed this Motion to Intervene in the Contested Matter now pending in the bankruptcy case of Andreas Abramson ("Debtor") – Debtor's Motion to Avid Judicial Lien of Helen McAbee ("Creditor"). *See* Dckt. 141. On October 26, 2018, the court issued an Order granting the Motion and adding Bernadette Cattaneo as a party to this Contested Matter. Order, Dckt. 225.

The court issued a further Order For Supplemental Briefing On Issue Of Application Of 11 U.S.C. § 522(f)(2) and 11 U.S.C. § 522(i). Order, Dckt. 224. The Order provided the following briefing schedule:

> **IT IS ORDERED** that a hearing will be conducted at **10:30 a.m. on December 20, 2018**, for oral argument on this legal issue. On or before **November 16, 2019**, Debtor shall file and serve a supplemental pleading addressing this issue arising under 11 U.S.C. § 522(f), Responses from Creditor and Intervenor shall be filed and served on or before **December 7, 2018**, and Reply, if any, filed and served by Debtor on or before **December 14, 2018**.

*Id.* The court determined that such supplemental briefing on the issue to determine the scope of these proceedings and whether, as a matter of law, either side had an "absolute loser" given the respective asserted values of the Property subject to the judgment lien and the total liens against the Property.

**DEBTOR'S SUPPLEMENTAL REPLY**

Debtor filed a Supplemental Reply Brief on November 16, 2018. Dckt. 229. Debtor argues statutory formula of Section 522(f)(2) appears to treat consensual liens more favorably than judicial liens, but the fact that there is a consensual lien that is junior to a judicial lien is not a reason to ignore the statute's direction to count that lien as among the other liens on the property for purposes of calculating avoidably of the judicial lien under Section 522(f). *Id* at 1:24-27. Debtor argues the potential of a windfall to a junior lienholder is irrelevant to the interpretation of 11 U.S.C. § 522(f). *Id.* at 2:17.

Debtor argues finally that his father's Second Deed of Trust is valid, discovery having

been propounded to creditors. Debtor requests the court apply the rule of *Moldo v. Charnock (In re Charnock)*, 318 B.R. at 728, 729.

**INTERVENOR'S SUPPLEMENTAL BRIEF
& ADOPTION BY CREDITOR HELEN MCCABE**

Intervenor filed a Supplemental Brief on December 7, 2018. Dckt. 231. Intervenor argues there is a split on whether lien priority factors into lien avoidance, with no binding authority. *Id*. at 5:18-25. Intervenor argues further that under *In re Simonson,* it appears that Congress intended that debtors be able to preserve their exemption from the value of an avoided lien, and that junior lienholders be left in the same position they originally occupied—receiving neither windfall nor injury. *Id*. at 6:9-10. Under Creditor's analysis, Intervenor argues, the lien is avoided to the extent that it impairs the Debtor's exemption—by $75,000– and the junior lien is left in exactly the same position that it was in prior to the partial avoidance of the McAbee Lien. *Id*. at 6:16-19.

Finally, Intervenor argues the present facts present a situation warned about in *Charnock* and *Kolich*, where application of 11 U.S.C. § 522 would "give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment," and that this could lead to abuses of § 522(f) resulting from "self-interest or hard-to-detect collusion." Intervenor argues Debtor and his father either colluded to manufacture the junior second deed of trust with the purpose of defeating the senior McAbee Lien, or if not, the loan was an insider transaction made with full knowledge of the judgment lien and should not be factored into the avoidance analysis.

Creditor Helen McCabe filed a Notice of Joinder on December 11, 2018, indicating an intent to join in Intervenor's response so as to avoid duplicative responses. Dckt. 232. It appears that Creditor and Creditor's counsel, have handed the destiny of Creditor's secured claim to the Intervenor who is also obligated on the obligation.

**DEBTOR'S RESPONSE TO SUPPLEMENTAL BRIEF OF INTERVENOR**

Debtor filed a Response to Intervenor's Brief on December 14, 2018. Dckt. 239. Debtor argues that (1) 11 U.S.C. § 522 is not void, as federal law trumps state law; (2) Intervenor has not provided evidence of any fraud or collusion; (3) the argument against a "windfall" is actually an attack on Debtor's right to a fresh start; and (4) "concern" expressed by a few courts is not reason to ignore the plain language of 11 U.S.C. § 522.

**DISCUSSION**

11 U.S.C. § 522(f)(1)(A) provides that a debtor may avoid the fixing of a judicial lien on exempt property "to the extent that such lien impairs an exemption to which the debtor would have been entitled." These simple words have caused decades of legal hand wringing, appeals, Supreme Court review, and intended remedial legislation. From a review of the cases, the application of these provisions in the situation where the judgment lien is sandwiched between to consensual liens continues to cause consternation.

      With the 1994 amendments to 11 U.S.C. § 522(f)(2) Congress believed it was providing the parties and trial judges with a simple mathematical formula to determine impairment. While a mathematical formula, the consternation continues. See Collier on Bankruptcy, 16th Edition, ¶ 522.11[3], in which the discussion starts with, "Another pattern that had created some difficulty for the courts in applying section 522(f) was the problem of avoidable liens that are senior to unavoidable interests."

      Beginning with the "Plain Language" of the mathematical formula, the court is directed to compute the impairment of the Debtor's exemption by subtracting the total of the liens against the property (excluding any already avoided liens) and the amount of the Debtor's homestead exemption from the value of the Debtor's interest in the property (here, the fair market value of the property).

      Using the value of the property alleged by Debtor and the value of the property alleged by **Creditor, these "simple" computations are as follows**:

|  | Debtor Calculation | Creditor Calculation |
|---|---|---|
| 1st DOT, Senior to Judgment Lien | ($925,557.00) | ($925,557.00) |
| Creditor Judgment Lien | ($770,000.00) | ($770,000.00) |
| 2nd DOT, Junior to Judgment Lien (Disputed by Creditor) | ($265,000.00) | ($265,000.00) |
|  |  |  |
| Total of Liens | ($1,960,557.00) | ($1,960,557.00) |
| Exemption | ($75,000.00) | ($75,000.00) |
|  |  |  |
| Fair Market Value Asserted | $1,160,027.00 | $1,725,000.00 |
|  |  |  |
| Value Which Exists to Secure Creditor's Judgment Lien (FMV - 1st DOT - Exemption = Value for Creditor's Lien) | $159,470.00 | $724,443.00 |

By Debtor's calculation, the liens and homestead exemption exceed the value of the Property by $875,530.00. For the Creditor, it is slightly better, there being "only" a $310,557.00 amount by which the liens and homestead exemption exceed the value of the Property.

Using the Creditor's calculation, it would appear that Debtor could avoid $310,557.00 of the judgment lien claim, reducing it to ($495,443.00).FN.1. The express language of 11 U.S.C. § 522(f)(1) is that the judgment lien may be avoided to the extent it impairs an exemption, with the "impairment" computed by the "simple" mathematical computation.

---

FN.1. This does not take into account the alleged dispute concerning the 2nd Deed of Trust asserted by Debtor's father. To the extent that the obligation on the 2nd Deed of Trust was reduced, the impairment caused by the Creditor's judgment lien is reduced and the amount of the debt secured by the judgment lien increases.

---

Alternatively, if the Debtor's value is used, the impairment is $875,530.00, it appears that all of the judgment lien can be "considered" voidable, the impairment exceeding the ($770,000.00) judgment lien claim. But to avoid all of the judgment lien would have the effect of not merely preserving the Debtor's $75,000.00 homestead exemption, but also hand the holder of the junior 2nd Deed of Trust, the Debtor's father in this case, a $159,470.00 windfall. That occurs because after the 1st Deed of Trust there is $234,470.00 of value. After subtracting the Debtor's $75,000.00 homestead exemption there is $159,470.00 in value securing the judgment lien claim. So, if Creditor were to conduct a judicial sale for what Debtor asserts is the fair market value of the property, then the 1st Deed of Trust obligation is paid in full, the Debtor paid the $75,000.00 homestead exemption, and then the balance to Creditor – with $0.00 to the holder of the 2nd Deed of Trust (Debtor's father).

Thus, in attempting to properly apply 11 U.S.C. § 522(f) to this type of "sandwich" judgment lien, one questions whether Congress would draft a statute that works to benefit (the vast majority of time) institutional lenders holding junior deeds of trust who choose to lend to borrowers (and take a junior lien behind) who have existing judgement liens of record. Also, whether Congress has drafted a statute which would create an incentive for an insider, such as a debtor's parent, to obtain a deed of trust behind a judgment lien creditor (a loan that potentially never would be made by an non-colluding insider based on reasonable business calculations) for the purposes of manufacturing an impairment and transfer the judgment lien creditor's collateral to the insider.

**Application of 11 U.S.C. § 522(i)**

Congress has provided the courts and parties with an additional insight of what is intended by an 11 U.S.C. § 522(f) avoidance of a judgment lien. In 11 U.S.C. § 522(I) [emphasis added] Congress provides:

> (I) (1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the

limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

(2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

In 11 U.S.C. § 550 provides that upon avoiding a transfer, the property itself may be recovered. Here, the property avoided is the lien. Congress further provides in 11 U.S.C. § 551 that a transfer avoided under 11 U.S.C. § 522 is "preserved for the benefit of the bankruptcy estate." But such avoided transfer is subject to the claim of exemption, which will cause it then to be transferred from the bankruptcy estate to the debtor. See 11 U.S.C. § 522(i)(2).

Thus, in avoiding the judgment lien pursuant to 11 U.S.C. § 522(f) in the "sandwich" lien situation, it appears that Debtor preserves the $75,000.00 (in this case) exemption of the judgment lien. This preserved portion of the judgment lien is for the for the benefit of the Debtor and continues in priority to the junior consensual 2nd Deed of Trust. While it may seem a bit strange that a debtor would have an interest in a judgment lien against himself, it is the Bankruptcy Code that creates such anomaly. The holder of the junior deed of trust is not harmed, the judgment lien otherwise coming before it. (Generally, it will not be a debtor's father holding the junior deed of trust, but some institutional lender who is benefitting from a mathematical reduction in the judgment lien senior to it.)

**"Considered" to be an Impairment**

In drafting 11 U.S.C. § 522(f)(2), the language used by Congress is that the mathematical formula will produce a result that is to be "considered" to impair an exemption. It does not say "shall be the impairment of an exemption." The word "considered" as defined in the Merriam-Webster Dictionary as:

transitive verb

1 : to think about carefully: such as

a : to think of especially with regard to taking some action
//is considering you for the job
//considered moving to the city

b : to take into account
//The defendant's age must be considered.

. . .
4 : to come to judge or classify
//consider thrift essential

intransitive verb

> : reflect, deliberate
>> //paused a moment to consider

In "considering" the impairment when there is a "sandwich" judicial lien, there is no new value being obtained or created after the avoiding of the judicial lien. Other than the $75,000.00 portion of the avoided judgment lien that is preserved for Debtor, the hundreds of thousands of dollars of the 2nd Deed of Trust (by Debtor's statement of the debt owed his father).

Thus, it may be that an argument can be made that when the court "considers" the mathematical impairment, for the sandwich judgment lien claim, once the Debtor has avoided the $75,000.00 exemption and the amount of the 2nd Deed of Trust exhausts all value in the property, there is no basis for "transferring" the monies that would be subject to the judgment lien to the holder of the undersecured 2nd Deed of Trust.

**Review of Case Authority**

The case *Moldo v. Charnock (In re Charnock)*, 318 B.R. 720 (B.A.P. 9th Cir. 2004) addressed this "sandwich" judgment lien issue. In *Moldo*, the liens and exemption amounts totaled ($514,348.00) and the value of the property was $435,000.00. In addressing the "windfall" scenario for the junior deed of trust holder, the *Moldo* court concluded that since the debtor was the beneficiary of the preserved avoided judgment lien, the holder of the junior deed of trust did not receive a windfall, but was still subject to the same judgment lien. The *Moldo* court cited to the legislative history and the dissent in *In re Simonson*, 758 F.2d 103 (3rd Cir. 1985), which is identified as the legal theory incorporated by Congress and result sought in the 1994 legislation.

> Under my view of this case, therefore, the Simonsons should be permitted to apply to their exemption the value of the avoided liens, $14,411.33, leaving the SBA in the same priority position it occupied prior to the commencement of the case. This result not only effectuates Congress' intent to preserve the debtor's exemption and thereby provide them with a "fresh start," **but also prevents a junior encumbrancer from receiving a windfall merely because the debtor chose to avoid the superior judicial liens.** See H.R. Rep. No. 595, 95th Cong., 1st Sess. 376, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6332 (noting that a primary purpose of § 551 as a whole is **to prevent junior creditors from benefitting at the expense of the estate when senior liens are avoided**).

*In re Simonson*, 758 F.2d at 110 (emphasis added).

There was no windfall because the exemption consumed the entire judgment lien sought to be avoided, not merely a fractional part thereof. *In Moldo,* the court (correctly) stated that a debtor preserving the homestead exemption was not a "windfall" for the debtor, but part of the fresh start intended by Congress. *Moldo v. Charnock,* 318 B.R. at 725.

But as to the junior deed of trust holder in *Moldo*, the Bankruptcy Appellate Panel went further to state,

Nor are we persuaded by Creditor's argument that Consensual Lender might receive an unintended windfall from avoidance of Creditor's judicial lien. Creditor cites no authority that Consensual Lender would receive any benefit from such avoidance, and the dissent in *Simonson* (approved by the legislative history to the 1994 amendments) suggests otherwise:

> . . . the debtor may recover the avoided judicial lien [under Section 522(i)(1)], and the equitable interest represented thereby merges with the legal title to the property already in the estate.

*Id.*Fn.2.*In Moldo*, the exemption for the avoided judicial lien consumed all of the value in the property:

| | |
|---:|---|
| $435,000 | FMV |
| - $371,056 | First deed of trust |
| - $68,300 | Avoid judgment lien preserved by homestead exemption |
| ======== | |
| $0.00 | Value remaining after avoided judicial lien |

---

FN.2.　In discussing the "sandwich" judicial lien situation, the legislative history includes the following statement:

> The amendment also overrules *In re Simonson,* 758 F2d 103 (3d Cir. 1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and **the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted.**

1994(H.R. REP. 103-835, 52-54, 1994 U.S.C.C.A.N. 3340, 3361-63). The dissent in *Simonson* expressly raises and then resolves the potential windfall to the junior lien creditor issue concluding that there was no value after the senior lien and the avoided exemption preserved for the debtor. *See* citation to the dissent in Simonson, which is adopted into the 1994 legislation expressly stating that the junior non-consensual lien holder is not to benefit from the lien avoidance. *In re Simonson*, 758 F.2d at 110.

---

This is contrasted in the present facts, which as shown even by Debtor's valuation that there is at least $159,470.00 in value for the judgment lien that would be transferred to the holder of the junior 2nd Deed of Trust (the Debtor's father), if the 11 U.S.C. § 522(f) avoidance were to destroy the judgment lien in its entirety given that the Debtor cannot avoid and preserve pursuant to § 522(i) all of the amount of the judgment lien in excess of the exemption.

The correct calculation showing the avoidance of the lien, the preservation of the avoided lien for the Debtor, and the remaining unavoidable lien appears to be computed as follows:

|  | Debtor Calculation | Creditor Calculation |
|---|---|---|
| Asserted Fair Market Value | $1,160,027.00 | $1,725,000.00 |
| 1st DOT, Senior to Judgment Lien | ($925,557.00) | ($925,557.00) |
|  |  |  |
| Value for Creditor Judgment Lien of ($770,000) | $234,470.00 | $799,443.00 |
| Avoided Homestead Exemption Amount Preserved for Debtor | ($75,000.00) | ($75,000.00) |
|  |  |  |
| Value Remaining to Secure ($770,000) Creditor Judgment Lien | $159,470.00 | $724,443.00 |
|  |  |  |
| Amount of Non-Avoidable Judicial Lien | ($159,470.00) | ($724,443.00) |
|  |  |  |
| Avoided Amount of Creditor Judgment Lien | ($610,530.00) | ($45,557.00) |
|  |  |  |

  The above interpretation of the law appears to do honor both to the Bankruptcy Code and California law. As a matter of California law and Creditor were to take the property to judicial sale as part of enforcing her judicial lien, from the monies first received from the judicial sale she would have to pay Debtor the $75,000.00 homestead exemption amount. *See* Cal. C.C.P. § 704.800 and § 704.850 (emphasis added) which mandates the order of distribution of proceeds of a judicial lien sale:

  § 704.850. Distribution of proceeds of sale of homestead

  (a) The levying officer **shall distribute the proceeds of sale of a homestead** in the

following order:

> (1) **To the discharge of all liens and encumbrances**, if any, on the property.

California Code of Civil Procedure § 704.800 requires the bid at the sale of homestead property to be in excess of the senior liens and encumbrances to the judgment lien for which the sale is being conducted on the property being sold. *See Bratcher v. Buckner*, 90 Cal. App. 4th 1177, 1189 (2001); 1189, *Rourke v. Troy*, 17 Cal. App. 4th 880, 885-886 (1983).

> (2) **To the** judgment **debtor in the amount of any applicable exemption** of proceeds pursuant to Section 704.720.
>
> (3) **To the levying officer for the reimbursement** of the levying officer's costs for which an advance has not been made.
>
> (4) **To the judgment creditor** to satisfy the following:
>
>> (A) First, costs and interest accruing after issuance of the writ pursuant to which the sale is conducted.
>>
>> (B) Second, the amount due on the judgment with costs and interest, as entered on the writ.

At this point, as provided in *Rourke*, the next monies will go to pay junior lien creditors to the judgment lien being enforced.

> (5) To the judgment debtor in the amount remaining.

(b) Sections 701.820 and 701.830 apply to distribution of proceeds under this section.

Therefore, in the course of creditor asserting its rights, it can only recover the value over the senior lien(s) and homestead exemption.

In 11 U.S.C. § 522(i) Congress provides that the avoided judicial lien is recovered by the Debtor in the same way an avoided lien is recovered by of the bankruptcy estate under 11 U.S.C. § 550.

> (i)
>
> (1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.
>
> (2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

11 U.S.C. § 522(i). This preservation of the avoided judgment lien is discussed on Collier on Bankruptcy, Sixteenth Edition, ¶ 522.12 [4] (emphasis added) as follows:

> [4] Effect of Section 522(i)
>
> In keeping with the notion that the debtor is exercising the powers of the trustee in these transfer avoidance actions, section 522(i)(2) adopts the rule of section 551 that avoided transfers are preserved. Under section 551, these transfers are preserved for the benefit of the estate, **while under section 522(i)(2), they are preserved for the benefit of the debtor**.18 There is, however, a difference in the language of section 522(i)(2) as compared to section 551. Section 522(i)(2) provides that the avoided transfer "may be preserved," while section 551 states that the avoided transfer "is preserved." Thus, the debtor should request that the avoided transfer be preserved in an appropriate case. **Preservation of these transfers allows the debtor to stand in the shoes of the transferee and obtain the benefit of that person's position relative to other creditors.**

Thus, it appears that there is at issue before the court a valuation determination, avoided judicial lien determination for the Debtor, the amount of the avoided lien preserved for the benefit of the Debtor, and the non-avoided portion of the Creditor's lien.

Those issues and all other issues are to be finally determined in this Contested Matter from which the court will issue its final determination and order. The statements above represent the interim consideration of the court, which will be finally determined upon completion of the evidentiary hearing. The parties may address the above issues as part of the evidentiary hearing.