*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>ANDREAS ABRAMSON,<br><br>　　　　　Debtor. | Case No.　18-90258-E-7<br>Docket Control No.　MF-6 |

**This Supplemental Memorandum Decision is not appropriate for publication. It may be cited for persuasive value on the matters addressed.**

**SUPPLEMENTAL MEMORANDUM OPINION AND DECISION
TO RULING STATED ON RECORD GRANTING
DEBTOR'S AMENDED MOTION TO AVOID
JUDICIAL LIEN OF HELEN McABEE**

Andreas Abramson, the Chapter 7 Debtor ("Debtor"), filed an Amended Motion to Avoid the Judicial Lien of Helen McAbee ("Creditor") on August 8, 2018. Motion, Dckt. 141. The court granted the Motion of Bernadette Cattaneo, the Debtor's ex-spouse and a co-obligor on the judgment of Creditor ("Intervenor"), allowing her to participate in this contested matter due to her financial interest in the outcome. Order, Dckt. 225. In allowing the intervention, the court placed the condition that her participation would not be duplicative or unnecessarily cumulative, and would not be conducted in a way to constitute an inappropriate "double teaming" against Debtor. *Id.*; Civil Minutes, Dckt, 222. The briefing and determination of the legal issues were conducted at a prior hearing and then the evidentiary hearing was conducted to determine the value of the property securing Creditor's claim to compute the lien avoidance were conducted with these three Parties.

The court's determination of the legal issues raised in this Contested Matter are stated in this

Memorandum Opinion and Decision, which incorporates the prior ruling in this Contested Matter on said issue.

For the factual issue of the value of the Property and determination of what constitutes the avoidable part of Creditor's judgment lien, the court conducted an evidentiary hearing in this Contested Matter on March 13, 2019. The court's oral findings of fact and conclusions of law for the Evidentiary Hearing were stated orally on the record (Fed. R. Civ. P. 52(a), Fed. R. Bankr. P. 7052, 9014(b)) at that hearing, which are made a part hereof by this reference.

The avoidance of a judicial lien pursuant to 11 U.S.C. § 522(f) is a core matter arising under the Bankruptcy Code for which the bankruptcy judge of the United States Bankruptcy Court enters the judgment. 11 U.S.C. § 522(f); 28 U.S.C. § 1334 and § 157; and the referral of bankruptcy cases and all related matters to the bankruptcy judges in this District. ED Cal. Gen Order 182, 223.

**SUMMARY OF DECISION**

The court has determined that the real property commonly known as 83 Sanguinetti Court, Copperopolis, California (the "Property") encumbered by Creditor's Judgment Lien in the California Superior Court for the County of San Benito Case No. CU-10-00017, has a value of $1,305,377.00. Creditor's judgment secured by the Property by the Judgment Lien is ($770,000.00).[1]

In addition to Creditor's Judgment Lien, the Property is encumbered by: (1) a deed of trust which is senior in priority to Creditor's Judgment Lien which secures an obligation in the amount of ($925,557.00), (2) Debtor's homestead exemption in the amount of ($75,000.00) that is senior in priority to the Judgment Lien, (3) a second deed of trust junior in priority securing an obligation in the amount of ($265,000.00), and (4) a third deed of trust junior in priority securing an obligation in the amount of ($16,000.00).

After performing the mathematical calculation provided in 11 U.S.C. § 522(f) (2), the court determines that Creditor's Judgment Lien for all amounts in excess of ($304,818.00) is avoided pursuant to 11 U.S.C. § 522(f). The ($465,182.00) amount of the judgment lien that is avoided

---

[1] For this Memorandum Opinion and Decision the court identifies obligations and debts as ($ negative) numbers to clearly distinguish them from values and positive amounts.

pursuant to 11 U.S.C. § 522(f) is preserved for the benefit of Debtor as provided in 11 U.S.C. § 522(i), § 550, and § 551.

## DISCUSSION

The present Motion concerns the Property, which is the Debtor's residence. Debtor has claimed, and no objection to which was made, a $75,000.00 homestead exemption in the Property. Amended Schedule C, Dckt. 71 at 2.

As determined at the Evidentiary Hearing, the Property has a value of $1,305,375.00.

After performing the mathematical calculation provided in 11 U.S.C. § 522(f) (2), the court determines that there is $304,818.00 in value that secures Creditor's Judgment Lien.

```
Fair Market Value of Property.......................$1,305,375.00
Obligation Secured by Senior Deed of Trust..................($  925,557.00)
Debtor's Homestead Exemption...................................($   75,000.00)
Value of Debtor's Interest Encumbered by Judgment Lien........$304,818.00
```

The total amount of the obligation secured by the judgment lien is ($770,000.00). After applying the $304,818.00 of value in the property, there is ($465,182.00) "excess" of the judgment lien for which there is no value in the Property.

The issues addressed at the December 20, 2018 hearing and conclusions stated in the Civil Minutes from the hearing which are stated below are incorporated herein.

**Application of 11 U.S.C. § 522(f) When Property is Encumbered by Consensual Liens Junior to the Judgment Lien[2]**

11 U.S.C. § 522(f)(1)(A) provides that a debtor may avoid the fixing of a judicial lien on exempt property "to the extent that such lien impairs an exemption to which the debtor would have been entitled." These simple words have caused decades of legal hand wringing, appeals, Supreme Court review, and well-intended remedial legislation. From a review of the cases, the application of these provisions in the situation where the judgment lien is sandwiched between two consensual

---

[2] This is the court's ruling stated at the December 20, 2018 hearing on this Motion, which is now unified into the court's final decision upon the completion of the evidentiary hearing.

3

liens continues to cause consternation.

With the 1994 amendments to 11 U.S.C. § 522(f)(2) Congress believed it was providing the parties and trial judges a simple mathematical formula to determine impairment. While a mathematical formula, the delving into the statutory language continues. See COLLIER ON BANKRUPTCY, 16TH EDITION, ¶ 522.11[3], in which the discussion starts with, "Another pattern that had created some difficulty for the courts in applying section 522(f) was the problem of avoidable liens that are senior to unavoidable interests."

The three deeds of trust and the judgment lien secure obligations in excess of the $1,305,375.00 value of the Property, without even taking into account the amount of the ($75,000.00) homestead exemption.

The order of the liens in this case does not present the court with the simple situation of there being a deed of trust, homestead exemption, and then a judgment lien on the property encumbering some value in excess of the deed of trust and homestead exemption, or one in which the deed of trust and homestead exemption exhaust the value of the property.

Creditor and Intervenor assert that to avoid all of the judgment lien based on the gross amount of liens would have the effect of not merely preserving the Debtor's $75,000.00 homestead exemption, but also handing the holder of the junior 2nd Deed of Trust, the Debtor's father in this case, an immediate windfall of $304,818.00, the value of the property in excess of the senior deed of trust and homestead exemption which exists for Creditor's Judgment Lien that is senior in interest to the 2nd Deed of Trust.

In properly applying 11 U.S.C. § 522(f) to this type of "sandwich" judgment lien, one questions whether Congress would draft a statute that works to benefit (the vast majority of time) institutional lenders holding junior deeds of trust who choose to lend to borrowers (and take a junior lien behind) who have existing judgment liens of record. Also, whether Congress has drafted a statute which would create an incentive for an insider, such as a debtor's parent, to obtain a deed of trust behind a judgment lien creditor (a loan that potentially never would be made based on reasonable business calculations by a non-colluding insider) for the purposes of manufacturing an impairment and transferring the judgment lien creditor's collateral to the insider or the debtor

4

pursuant to 11 U.S.C. § 522(i).

**"Considered" to be an Impairment**

In drafting 11 U.S.C. § 522(f)(2), the language used by Congress is that the mathematical formula will produce a result that is to be "considered" to impair an exemption. It does not say "shall be the impairment of an exemption" or that "a lien impairs an exemption." Instead, in drafting the "plain language" Congress has inserted the word "considered" into the exemption impairment process. The word "considered" as defined in the Merriam-Webster Dictionary as:

> transitive verb
>
> 1 : to think about carefully: such as
>
> a : to think of especially with regard to taking some action
> //is considering you for the job
> //considered moving to the city
>
> b : to take into account
> //The defendant's age must be considered.
> . . .
> 4 : to come to judge or classify
> //consider thrift essential
>
> intransitive verb
>
> : reflect, deliberate
> //paused a moment to consider

Much debate has raged over this "plain language."

This "considered to impair an exemption" is written in the passive voice, indicating that it may be the first step in the avoidance process - getting the Debtor into the avoidance door. Once "in the door," it being considered a gross impairment, Debtor can then avoid the judgment lien to the extent that it impairs the exemption.

In "considering" the impairment when there is a "sandwich judicial lien," the Debtor is entitled to protect his homestead exemption (a dollar amount exemption - *see Schwab v. Reilly*, 130 S.Ct. 2652, 2667, 177 L. Ed. 2d 234 (2010); *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1210 (9th Cir. 2010)) not merely avoid liens for which there is value in the Debtor's interest in the property above the homestead exemption. Such avoidance is for the homestead amount and any amounts for which there is no value in the Debtor's interest for the judgment lien, which avoidance

is preserved for Debtor as discussed below. In this case, the hundreds of thousands of pre-petition dollars stated to be owed to the holder of the 2nd Deed of Trust (based on Debtor's statement of the debt owed his father) are not changed. The 2nd Deed of Trust is junior to the same amount of senior interests as it was as of the commencement of the bankruptcy case. The fact that Congress has made the policy decision that such avoided amounts should go to the Debtor rather than the judgment lien creditor does not harm the holder of the 2nd Deed of Trust in this case.

**Application of 11 U.S.C. § 522(i)**

Congress has provided the courts and parties with an additional insight of what is intended by an 11 U.S.C. § 522(f) avoidance of a judgment lien. In 11 U.S.C. § 522(i) Congress provides:

> (i) (1) If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.
>
> (2) Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

In 11 U.S.C. § 550, Congress provides that upon avoiding a transfer, the transfer itself may be recovered. Here, the transfer avoided is the lien. Congress further provides in 11 U.S.C. § 551 that a transfer avoided under 11 U.S.C. § 522 is "preserved for the benefit of the bankruptcy estate." However, when such avoided transfer is subject to the claim of exemption, the provisions of 11 U.S.C. § 522(i)(2) expressly provide that the transfer is preserved for the benefit of the debtor.

Thus, in avoiding a judgment lien pursuant to 11 U.S.C. § 522(f) in the "sandwich" lien situation, the Debtor avoids and then preserves for Debtor's benefit the avoided portion of the judgment lien. This preserved portion of the judgment lien is for the benefit of the Debtor (11 U.S.C. § 522(i)), which continues in priority to the junior consensual 2nd Deed of Trust. While it may seem a bit strange that a debtor would have an interest in a judgment lien enforceable against property he or she owns, it is the Bankruptcy Code that creates such an "anomaly" for nonbankruptcy attorneys. The holder of the junior deed of trust is not harmed, the judgment lien otherwise coming before it (generally, it would not be a debtor's father holding the junior deed of

6

trust, but some institutional lender looking to benefit from a mathematical reduction in the judgment lien senior to it).

**Review of Case Authority**

The case *Moldo v. Charnock (In re Charnock)*, 318 B.R. 720 (B.A.P. 9th Cir. 2004) addressed this "sandwich" judgment lien issue. In *Moldo*, the liens and exemption amounts totaled ($514,348.00) and the value of the property was $435,000.00. In addressing the "windfall" scenario for the junior deed of trust holder, the *Moldo* court concluded that since the debtor was the beneficiary of the preserved avoided judgment lien, the holder of the junior deed of trust did not receive a windfall, but was still subject to the same judgment lien. The *Moldo* court cited to the legislative history and the dissent in *In re Simonson*, 758 F.2d 103 (3rd Cir. 1985), which is identified as the legal theory incorporated by Congress and result sought in the 1994 legislation.

> Under my view of this case, therefore, the Simonsons should be permitted to apply to their exemption the value of the avoided liens, $14,411.33, leaving the SBA in the same priority position it occupied prior to the commencement of the case. This result not only effectuates Congress' intent to preserve the debtor's exemption and thereby provide them with a "fresh start," **but also prevents a junior encumbrancer from receiving a windfall merely because the debtor chose to avoid the superior judicial liens.** See H.R. Rep. No. 595, 95th Cong., 1st Sess. 376, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6332 (noting that a primary purpose of § 551 as a whole is **to prevent junior creditors from benefitting at the expense of the estate when senior liens are avoided**).

*In re Simonson*, 758 F.2d at 110 (emphasis added).

There was no windfall because the exemption consumed the entire judgment lien sought to be avoided, not merely a fractional part thereof. *In Moldo*, the court (correctly) stated that a debtor preserving the homestead exemption was not a "windfall" for the debtor, but part of the fresh start intended by Congress. *Moldo v. Charnock,* 318 B.R. at 725.

But as to the junior deed of trust holder in *Moldo*, the Bankruptcy Appellate Panel went further to state,

> Nor are we persuaded by Creditor's argument that Consensual Lender might receive an unintended windfall from avoidance of Creditor's judicial lien. Creditor cites no authority that Consensual Lender would receive any benefit from such avoidance, and the dissent in *Simonson* (approved by the legislative history to the 1994 amendments) suggests otherwise:

7

> . . . the debtor may recover the avoided judicial lien [under Section 522(i)(1)], and the equitable interest represented thereby merges with the legal title to the property already in the estate.

*Id.*[3]

However, in the Motion now before the court there is $304,818.00 in value for the judgment lien that is in excess of the senior lien and the Debtor's exemption. If that value in the property were deemed to impair the exemption just because the Debtor's father placed the 2nd Deed of Trust on the Property for some additional obligations, then there would be $304,818.00 of actual value encumbered by the Judgment Lien that would be taken from Creditor and either: (1) given to Debtor's father whose 2nd Deed of Trust is junior to the Judgment Lien as a matter of law or (2) to the Debtor for existing value in the Property which Debtor cannot claim as exempt.

As discussed below, the court concludes that the $304,818.00 of actual value in the Property which exists for Creditor's Judgment Lien results in there being the Judgment Lien in the amount of ($304,818.00) that cannot be avoided. The ($465,182.00) balance of the Judgment Lien that exceeds the $304,818.00 value for the lien can be avoided and is preserved for the benefit of the Debtor pursuant to 11 U.S.C. § 522(f), which is senior to the 2nd Deed of Trust.

**Federal and California Law Harmonized**

The above interpretation of the law honors both to the Bankruptcy Code and California law in applying the provisions of 11 U.S.C. § 522(f).

As a matter of California law and if Creditor were to take the property to judicial sale as part of enforcing her judicial lien, from the monies first received from the judicial sale she would have

---

[3] In discussing the "sandwich" judicial lien situation, the legislative history includes the following statement:

> The amendment also overrules *In re Simonson,* 758 F2d 103 (3d Cir. 1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted.

1994(H.R. REP. 103-835, 52-54, 1994 U.S.C.C.A.N. 3340, 3361-63). The dissent in *Simonson* expressly raises and then resolves the potential windfall to the junior lien creditor issue concluding that there was no value after the senior lien and the avoided exemption preserved for the debtor. *See* citation to the dissent in Simonson, which is adopted into the 1994 legislation expressly stating that the junior non-consensual lien holder is not to benefit from the lien avoidance. *In re Simonson*, 758 F.2d at 110.

8

to pay Debtor the $75,000.00 homestead exemption amount. *See* Cal. C.C.P. § 704.800 and § 704.850 (emphasis added) which mandates the order of distribution of proceeds of a judicial lien sale:

> § 704.850. Distribution of proceeds of sale of homestead
>
> (a) The levying officer **shall distribute the proceeds of sale of a homestead** in the following order:
>
>     (1) **To the discharge of all liens and encumbrances**, if any, on the property.

California Code of Civil Procedure § 704.800 requires the bid at the sale of homestead property to be in excess of the senior liens and encumbrances to the judgment lien for which the sale is being conducted on the property being sold. *See Bratcher v. Buckner*, 90 Cal. App. 4th 1177, 1189 (2001); *Rourke v. Troy*, 17 Cal. App. 4th 880, 885-886 (1983).

>     (2) **To the** judgment **debtor in the amount of any applicable exemption** of proceeds pursuant to Section 704.720.
>
>     (3) **To the levying officer for the reimbursement** of the levying officer's costs for which an advance has not been made.
>
>     (4) **To the judgment creditor** to satisfy the following:
>
>         (A) First, costs and interest accruing after issuance of the writ pursuant to which the sale is conducted.
>
>         (B) Second, the amount due on the judgment with costs and interest, as entered on the writ.

At this point, as provided in *Rourke*, the next monies will go to pay junior lien creditors to the judgment lien being enforced.

>     (5) To the judgment debtor in the amount remaining.
>
> (b) Sections 701.820 and 701.830 apply to distribution of proceeds under this section.

*Id.* Therefore, in the course of creditor asserting its rights, it can only recover the value over the senior lien(s) and homestead exemption.

In 11 U.S.C. § 522(i) Congress provides that the avoided judicial lien is recovered by the Debtor in the same way an avoided lien is recovered by of the bankruptcy estate under 11 U.S.C. § 551. This preservation of the avoided judgment lien is discussed on COLLIER ON BANKRUPTCY,

9

SIXTEENTH EDITION, ¶ 522.12 [4] (emphasis added) as follows:

> [4] Effect of Section 522(i)
>
> In keeping with the notion that the debtor is exercising the powers of the trustee in these transfer avoidance actions, section 522(i)(2) adopts the rule of section 551 that avoided transfers are preserved. Under section 551, these transfers are preserved for the benefit of the estate, **while under section 522(i)(2), they are preserved for the benefit of the debtor**. There is, however, a difference in the language of section 522(i)(2) as compared to section 551. Section 522(i)(2) provides that the avoided transfer "may be preserved," while section 551 states that the avoided transfer "is preserved." Thus, the debtor should request that the avoided transfer be preserved in an appropriate case. **Preservation of these transfers allows the debtor to stand in the shoes of the transferee and obtain the benefit of that person's position relative to other creditors.**

Thus, the exemption laws, the avoiding provisions, and the preservation of the interest transferred at play (11 U.S.C. § 522(f), § 522(i), § 550, and § 551) are consistent with each other and are properly applied in the sandwich judgment lien situation by avoiding that portion of the judgment lien for which there is no value in the Property after considering the senior unavoidable liens and homestead exemption. This protects the property rights of the judgment lien creditor which actually exist and avoids that portion of the judgment lien for which there is no value. Further, it gives full force and effect to preserving the avoided portion of the judgment lien (for which there was no value as of the filing of the case) for the Debtor to preserve that position as he works to build value in his homestead property going forward. The junior, out of the money, unavoidable deeds of trust do not merely slip in and gobble up Debtor's exemption and take the position of the judgment lien that federal law allows Debtor to avoid and preserve for his benefit.[4]

For the court to finally determine the amount of the lien to be avoided and the portion of the judgment lien, if any, that cannot be avoided under 11 U.S.C. § 522(f), the evidentiary hearing was conducted on March 13, 2019.

///

///

---

[4] This also creates a benefit for the junior, out of the money, unavoidable liens. Though they do not get to slip up and take the avoided judgment lien's position, the avoided judgment lien position becomes a static amount. It is the Creditor who continues to hold the judgment, including the portion no longer secured by the judgment lien, which is accruing the post-judgment interest. Thus, for the junior, out of the money, unavoidable liens, the senior lien position to them is no longer growing at 10% per annum.

## DETERMINATION OF VALUE OF THE PROPERTY
## AND
## AVOIDANCE OF JUDGMENT LIEN

The court was presented with expert witnesses by the Debtor and by the Creditor and Intervenor. Each also presented witnesses concerning the damage to the dock on the Property and repair expenses to be considered by the court in making the determination of value.

An initial, and unusual issue, was presented to the court. As discussed in the court's oral findings, the various experts could not agree as to the size of the residence on the Property. The sizes of the residence ranged from:

Debtor's Expert Christine Rodriguez..............................3,267 square feet

to

Debtor's Second Expert Jack Paddock...........................3,474 square feet

to

Creditor and Intervenor's Expert Roxana Stobaugh........3,665 square feet.

The square footage amounts testified to by each of the above experts are set forth in the appraisal reports admitted into evidence which are included as part of their respective Direct Testimony Statements (L.B.R. 9017-1).

Ms. Rodriguez testified that she believes that the Calaveras County records for the square footage of homes are often inaccurate, and that her statement of size of 3,267 square feet is based on her measuring the Property. While not saying that Calaveras County maintains inaccurate records, Creditor and Intervenor's expert, Ms. Stobaugh, testified that she too measured the Property to get the 3,665 square foot size. Debtor's second expert, Jack Paddock, did not testify as to his method in determining the square footage of 3,474 stated in his appraisal.

Ms. Stobaugh offered further testimony that may shed some light on the differences. She testified that because the home is built into a hillside, sloping down to the lake level, the lower floor is built into the hill and cannot be easily measure from the outside. She testified that to get an accurate measurement she measured the exterior for the upper floor and then did an interior measurement for the lower floor.

In Debtor's Supplemental Evidentiary Hearing Brief, Debtor reports to the court that

1 Calaveras County lists the residence as being 3,500 square feet in size. Supplemental Evid. Hrg. Brief, p. 2:2-6; Dckt. 264. This is consistent with the 3,474 square feet size used by Debtor's second expert Jack Paddock.

It would also be curious, if the residence was only 3,267 square feet in size, that Debtor would be paying property taxes on 233 square feet which did not exist, year after year. In making the factual determination of value, the court concluded that Debtor's second expert's statement of size at 3,474 square feet and the reported Calaveras County record stated size of 3,500 to be the most accurate statements and evidence in making the valuation determination.

As stated by the court on the record, after giving less weight to the outliers in adjusted value (such as listing price rather than actual sales price) the three experts were fairly close on the square footage value for this property - ranging in the high three hundreds to low four hundreds of dollars per square foot.

As one can compute by simple math, if the property with this residence has a value (based on all of the adjudged values for the comparables) of $400.00 a square foot for a 3,500 square foot home (to use nice round numbers), then the value of the Property could be computed to be $1,400,000.00. At $375.00 per square foot it would be $1,312,500.00 and at $425.00 a square foot it would be $1,487,500.00.

The court also considered, and made adjustments for the undisputed fact that there was some damage to the dock. As stated in its findings at the hearing, the court was not presented with reports of the actual damage (in part because to determine the interior damage parts would have to be disassembled, which nobody would want to do until the lien avoidance was determined) that would have to be fixed. The court was presented with construction experts providing testimony by:

    1. Creditor and Intervenor's construction expert John Tyler that to remove the damaged surface, install new subfloor, and make the exterior finish work, the cost would be $59,895.00. This amount did not include costs for any repairs for damage once the surface coating was removed and the interior damage, if any, exposed.

    2. Debtor's first construction expert Victor Scott Norvik that to remove the visibly damaged portions, rebuild the entire deck, put in place a new support structure, with new deck and electrical would have a cost of $106,472.00.

///

12

1  3. Debtor's second construction expert Jeff DeBernardi (who was identified as a friend of the Debtor and friend of Debtor's ex-spouse) that to tear the dock out and do an entire dock replacement would cost $202,232.25.

While Debtor vigorously argued that of course the value had to be reduced by $202,232.25 and Creditor and Intervenor argued that at most a $59,000.00 adjustment should be considered, neither presented the court with a clear explanation why either was correct. Additionally, as stated by the court at the hearing, the various experts did not clearly provide testimony of their knowledge and experiences as to how a buyer would make a price adjustment for the unknown repairs, other than to say that it would not be a dollar for dollar adjustment.

In the end, the court, as the finder of fact and applying the law as stated in 11 U.S.C. § 522(a) for determining "value," concluded that this Property had a value, as of the April 13, 2018 commencement of Debtor's bankruptcy case of $1,305,375.00. This allows for a significant reduction for the unknown deck repairs (though not the full $202,232.25 argued for by Debtor).

Therefore, upon consideration of the evidence presented, multiple briefs presented by Debtor and Creditor and Intervenor, weighing the testimony of the witnesses and the credibility of their statements and methodology in computing values, and the application of 11 U.S.C. § 522(f) and (i), the court determines that with a value of $1,305,357.00 the avoidance of the judgment lien of Creditor Helen McAbee on the real property commonly known as 83 Sanguinetti Court, Copperopolis, California is computed as follows:

|  | **Debtor Calculation** |  |
|---|---|---|
| Fair Market Value | $1,305,375.00 |  |
| 1st DOT, Senior to Judgment Lien | ($925,557.00) |  |
| Homestead Exemption | ($75,000.00) |  |
|  |  |  |
| Amount of Non-Avoidable Judicial Lien | $304,818.00 |  |
|  |  |  |

13

| Avoided Amount of Creditor Judgment Lien Preserved for Debtor Pursuant to 11 U.S.C. § 522(i). | ($465,182.00) | The amount of the ($770,000.00) judgment lien secured debt in excess of the $304,818.00 value in the Property for said lien. |
|---|---|---|

The ($465,182.00) voided amount of the judgment lien is preserved for the benefit of Debtor as provided in 11 U.S.C. § 522(i), § 550, and § 551.

The separate order of the court shall be issued avoiding the lien as stated in the Memorandum Opinion and Decision, which incorporates the court's findings of fact and conclusions of law stated orally on the record at the March 13, 2019 Evidentiary Hearing.

**Dated:** May 24, 2019

**By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

14

# Instructions to Clerk of Court
**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Richard B. Gullen, Esq.<br>Rossi, Hamerslough, Reischl & Chuck<br>1960 The Alameda, Ste. 200<br>San Jose, CA 95126-1493 | Stephen D. Finestone, Esq.<br>Finestone Hayes LLP<br>456 Montgomery Street, 20th Flr.<br>San Francisco, CA 94104 |